*517 OPINION.
Murdoch :
The petitioner in each of these cases is a trustee under the will of Sarah P. Barber. It happens that the same corporation is also a trustee under a deed executed by Sarah P. Barber. The second assignment of error raises the question of whether or not the *518 Commissioner erred in bolding that the purchase price received by the petitioners from the disposition of certain shares of stock included $97,084.35. The petitioners point out that this amount was never received by the trusts which are the taxpayers in these cases, but that this amount was allocated to and received by the trusts created by the deed. The probate court allocated this amount to the release of claims made by beneficiaries of the trust created by the deed.
The following quotations are taken from the respondent’s brief:
The respondent admits that the profit attributable to the sale oí the stocks by the trustee under the deed is not taxable to the trustee for remainder interests under the will. However, the respondent does not admit that $11,043.55 is the correct net amount. It is the respondent’s position that the whole amount received on the sale, $1,750,000, is attributable to the sale of the stocks, and that none of the proceeds of the sale is attributable to the release of the claims.
* * * The very gist of the transaction shows that the entire consideration paid was for the stocks, therefore, the $97,084.35 should be prorated between the $73,140.80 attributable to the trustee under the deed of trust and the $1,579,774.85 attributable to the trustee under the will, or $4,295.40 and $93,206.71, respectively. The respondent further admits that the amounts of $11,043.55 plus $4,295.40, or $15,338.95, is not taxable to the petitioners, but maintains that $1,579,744.85 plus $93,206.71, or $1,672,951.56, is the correct gross sales price on which to compute the net profit to the petitioners on the sale.
These admissions dispose of one issue raised by the petitioners, to wit, the action of the Commissioner in including $78,140.80 as part of the consideration for the transfer of stock by the petitioners. Thus, the basis, the consideration, and the profit on the stock transferred by the other trust, that created by deed, drop out of the computation of the profit to the petitioners on the disposition of their stock. But these admissions affect also the issue as to the $97,084.35. They disclose a weakness in the respondent’s contention as to this item, for he thus recognizes the propriety of a part of the allocation made by the probate court and only rejects the portion of the court’s ruling which holds that the $97,084.35 should be allocated to the trust under the deed as attributable to the release of the claims. We find ourselves unable to follow the respondent in making this distinction between the good and the evil in the court’s order. The respondent may be mistaken as to the occasion for the order of the court. It resulted from exceptions taken by the guardian ad litem of the infant grandchildren of Sarah P. Barber to an account filed by the petitioners. These exceptions were that in the account too little had been allocated to consideration for the petitioners’ stock. The court in its order then allocated a larger amount to this item. This case differs from John B. Ford et al., 19 B. T. A. 1143; affd., 51 Fed. (2d) 206, for here the order was not a consent order and the petitioners in this case never received the benefit of any of the money in controversy *519 which was allocated to the other trusts. It is true that the basis of the allocation, book value of the stocks, is not a very satisfactory one. The probate court appreciated this, but adopted it. nevertheless, saying:
The book value may or may not be the best criterion, but under the evidence of this case, exercising as it did the main tangible basis for adjustment of the purchase price, it is the most reasonable figure to .be used in separating the various items in their proper account.
We can not say that there was a better basis available to the court. Obviously, some allocation was necessary, since a lump sum was paid to separate trusts. The respondent not only does not suggest a better method, but he now adopts that made upon book values and suggests arbitrarily adding to the book values of each group of stocks a part of the excess cash in proportion to the book value of each group. It may be, as the respondent contends, that the petitioners’ proof is weak, but in our opinion, it is sufficient to weight the scales in their favor. The probate court stated that the claim of deceit entered vitally into the settlement, and it allocated a part of the consideration to the settlement of such claims. We accept this allocation. The $97,084.85 will be eliminated from the computation of the profit to the petitioners.
The remaining issue depends upon when the 200 shares of stock of Barber & Company, Inc., mentioned in the sixth and seventh clauses of the will, were acquired by. the trustee under the eighth clause of the will. The Commissioner has determined that they were acquired on the date of the death of Sarah P. Barber. The petitioners contend that they acquired the first 100 shares on February 3,1920, the date on which the United States Trust Company of New York transferred these shares from itself as executor to itself as residuary trustee. Edith married prior to the death of her mother, Sarah P. Barber, and the provision of the sixth clause of the will for the bequest of these shares in trust for her never became effective. Thus there was no intervening estate as to these shares before they became a part of the residuary estate. This is the same situation that existed in the case of Security Trust Co. et al., Trustees, 25 B. T. A. 29, where we held, following Brewster v. Gage, 280 U. S 327, that the stock was acquired at the date of the decedent’s death and the value of the stock on that date was the basis for the computation of gain to the testamentary trustee upon the disposition of the stock. Our ruling is the same in this case as to these 100 shares.
The petitioners contend that the 100 shares which were bequeathed first in trust for Elizabeth were acquired by them on September 27, 1921, the date of Elizabeth’s marriage and also the date on which the United States Trust Company of New York transferred this stock *520 from itself as trustee for Elizabeth to itself as residuary trustee. These shares were bequeathed in trust for Elizabeth until her marriage or death, whichever should happen first. The trust was set up, was in existence for about four years after the death of the testatrix, and ceased in 1921 at the marriage of Elizabeth. The 100 shares fell into the residuary estate upon the marriage of Elizabeth. As to these shares the petitioners are remaindermen under the will. In William Huggett, 24 B. T. A. 669, and in Rodman E. Griscom, 22 B. T. A. 979, we held that a testamentary remainderman acquires the property at the death of the testator. The Huggett case overruled the Griscom case on one point in holding that the value of the re« mainderman’s right rather than the value of the property which he ultimately received was the proper basis for gain or loss upon the subsequent disposition of the property itself. But this principle can not be applied in this case, for the Commissioner has computed the gain on the value of the stock at the date of the death of the testatrix, has not asked for an increased deficiency, and has not furnished data upon which to make a determination of any other value than the one he has used. We simply affirm the Commissioner on this point. The gain or loss on the sale of the 200 shares of stock of Barber & Company, Inc., will be computed upon the basis of the stipulated value of the stock on the date of the death of the testatrix. No question is raised as to the valuation of any of the other stock.
Reviewed by the Board.

Judgments will he entered under Rule 50.